IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SANDRA RENEE DRACH BAILEY                                PLAINTIFF

        v.                Civil No. 12-02247-JRM

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Sandra Renee Drach Bailey, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed for SSI and DIB on December 30, 2009. (Tr. 173.) She alleged a disability onset date of January 1, 1986 due to depression, mental disorders, anxiety and panic attacks, back, neck and ankle problems. (Tr. 105.) The onset date was later amended to November 29, 2007. (Tr. 79.) Plaintiff's applications were denied initially and on reconsideration. (Tr. 98, 105.) Plaintiff requested an administrative hearing, which was held on July 5, 2011. (Tr. 27.) Plaintiff was present to testify and was represented by counsel, David J. Throesch. The ALJ also heard testimony from Vocational Expert ("VE") Sarah Moore. (Tr. 27.)

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been subsituted for Commissioner Michael J. Astrue as the dedendant in this suit.

At the time of the administrative hearing, Plaintiff was 49 years old, possessed a high school diploma, and had been licensed as a cosmetologist in 1983. (Tr. 33.) The Plaintiff testified that she was currently working part-time as a cashier and drink-server at a bowling alley. (Tr. 37 )

On October 18, 2011 the ALJ concluded that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, obesity, hypertension, anxiety disorder, pain disorder, personality disorder not otherwise specified (NOS), and polysubstance abuse/dependence in partial remission." (Tr. 12.) The ALJ found that Plaintiff maintained the physical residual functional capacity to perform light work with limitations to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 14.) The ALJ further found that the Plaintiff could perform work "where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and use of little judgment required, and the supervision required is simple, direct, and concrete." (Tr. 14.) With the assistance of the VE, the ALJ determined that the Plaintiff could perform such representative occupations as housekeeper, small products assembler, and poultry processing worker. (Tr. 20.)

Plaintiff requested a review by the Appeals Council on November 10, 2011. (Tr. 6.) The Appeals Council denied the appeal on September 19, 2012. (Tr. 1.)

**II.   Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to

support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

3

**III. Discussion:**

Plaintiff raises three issues on appeal: 1) the ALJ's finding that the Plaintiff did not meet the physical impairment criteria of Appendix 1 Impairment Listings 1.02(A) and 1.04(A) was not supported by substantial evidence; 2) the ALJ's finding that the Plaintiff did not meet the mental impairment criteria of Appendix 1 Impairment Listings 12.04 and 12.06 was not supported by substantial evidence; and 3) the ALJ did not properly assess the Plaintiff's overall RFC. (Pl.'s Br. 1, 11-13)

The Plaintiff bears the burden of proof to establish that her impairment meets or equals a listing requirement. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). For the plaintiff to meet this burden she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010). "There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

**A.     Physical Impairment Evaluation Under 1.02(A) or 1.04(A)**

Section 1.02(A) for major dysfunction of joints requires the Plaintiff to show gross anatomical deformity with involvement of one major peripheral weight-bearing joint, resulting in inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §1.02(A) (WL current through Nov. 14, 2013). "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities,

such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." *Id.*

Section 1.04 (A) for disorders of the spine resulting in compromise of nerve root or the spinal cord, including "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §1.04(A) (WL current through Nov. 14, 2013).

Regarding her allegation of degenerative joint disease in both knees and right ankle, Plaintiff provided no objective medical evidence that she is unable to ambulate or that she has any physical abnormality in her knees or ankles. She did testify that standing at work gives her knee pain. (Tr. 39.) There are also notations that she reported "shots in her back and knees" in her Requests for Medical Advice Reports dated February 25, 2010 and March 30, 2010. (Tr. 366, 406.) There is no evidence in the medical record that Plaintiff ever received shots to her back and knees. There are, however, multiple notations from multiple physicians on multiple dates indicating normal joints and/or normal range of motion for lower extremities. (Tr. 325, 346, 352, 376, 407, 427, 434.) This is supported by the fact that the Plaintiff does not report requiring any assistance to ambulate, such as a cane or walker. She listed only the use of an ace bandage knee brace in her January 2010 Function Report. (Tr. 248.) According to the Plaintiff, the knee brace was not prescribed by a doctor. (Tr. 248.)

Plaintiff's allegation of degenerative disc disease is supported by objective medical evidence. An MRI performed on June 23, 1995 showed that she has "mild diffuse bulging of disc at L4-5 and L5-S1." (Tr. 320.) A lumbar x-ray in 1999 showed "no abnormality in the lumbar spine." (Tr. 323.) A lumbar spine X-ray in 2007 indicated "mild degenerative changes in L5-S1." (Tr. 324.) A physical

progress exam in June 2009 noted normal range of motion with paralumbar tenderness. (Tr. 326.) In a January 2010 emergency room exam, the physician noted lumbar tenderness and reduced range of motion after Plaintiff reported lifting heavy boxes onto a shelf. (Tr. 442-43.) However, her March 2010 Physical RFC exam showed normal flexion with paralumbar tenderness. (Tr. 376.) Subsequent exams to refill medications at the Van Buren Medical Clinic in December 2010, March 2011, and June 2011 noted that she reported pain, but her examining physician did not note any new issues with her musculosekeletal diagnosis. (Tr. 445-55.) Further, Plaintiff provided no medical evidence of nerve root compression, motor loss accompanied by sensory or reflex loss, or positive straight-leg raising tests to meet the requirements for Section 1.04(A) at any point in the medical record.

Because the Plaintiff did not provide objective medical evidence to meet all of the criteria for either the 1.02(A) or 1.04(A) criteria, the ALJ's findings concerning the Plaintiff's physical impairments are supported by substantial evidence.

**B.     Mental Impairment Evaluation**

Plaintiff argues that her mental impairments meet the findings of Section 12.04 and/or 12.06, and that the ALJ failed to properly evaluate her under the Paragraph B and C criteria for both sections. (Pl.'s Br. 13-18.)

Affective Disorders under section 12.04 are "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04(WL current through Nov. 14, 2013).

Anxiety-Related Disorders under 12.06 are disorders where "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting

6

the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.06 (WL current through Nov. 14, 2013).

Paragraph B of both sections addresses marked restrictions in the claimant's ability to perform activities of daily life, to maintain social functioning, to maintain concentration, persistence and pace, and if there is evidence of repeated episodes of repeated decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04(B) (WL current through Nov. 14, 2013). Paragraph C of 12.04 addresses whether there are repeated episodes of decompensation, if any change in environment would trigger decompensation, or if the individual could function outside of a highly supportive living arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (WL current through Nov. 14, 2013). Paragraph C of 12.06 addresses whether the individual has a complete inability to function outside the area of one's home. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.06© (WL current through Nov. 14, 2013).

Plaintiff underwent a Mental Diagnostic Exam with Dr. Kralik on March 23, 2010. Dr. Kralik diagnosed here with the following mental impairments: Axis I: Polysubstance dependence, Pain Disorder Associated With Both Psychological Factors and a General Medical Condition and Psychological factors affecting medical condition (maladaptive behaviors exacerbating health issues). Axis II: Personality Disorder NOS (with antisocial, borderline, narcissistic, and parasitic dependent features prominent). Her typical and current GAF were estimated at 45-55. (Tr. 382.) Dr. Kralik found that the Plaintiff's capacity to carry out the activites of daily living where "at most mildly impaired, but generally adequate for occupational purposes." (Tr. 382.) She found her capacity to sustain persistence to be mildly impaired for occupational purposes. (Tr. 383.) She found Plaintiff's capabilities on all other categories of adaptive functioning to be adequate for occupational purposes. (Tr. 382-83.)

7

Case 2:12-cv-02247-JRM Document 13 Filed 11/22/13 Page 8 of 12 PageID #: 73

Plainitff's mental RFC assessment by Dr. Kogut was dated April 2, 2010. D. Kogut found either no significant limitations or moderate limitations on all functions. She found no evidence of severe impairment and that the Plaintiff was capable of at least unskilled work. (Tr. 404.) She also stated that the Plaintiff's "MSCE indicates that [claimant] seems to be able to communicate/interact in a socially adequate manner, cope with the typical mental cognitive demands of basic work-like tasks, sustain attention/concentration and complete work tasks within an acceptable time frame." (Tr. 404.) Plaintiff was evaluated by Dr. Hudson in January 2008 who found a GAF score of 38-42, and stated that it would be lower without the assistance of her mother. (Tr. 84, 308.)

Plaintiff argues that the ALJ should evaluate Plaintiff's anxiety-related disorder under paragraph B and C of 12.04 and 12.06. and appears to state that a GAF score of 38-42 in 2008 by Dr. Hudson supports this argument. (Pl.'s Br. at 13-16.)

The ALJ expressly discussed Plaintiff's mental impairments, both singly and combined, concerning the topics of Paragraphs B and C of both sections: activities of daily living, social functioning, concentration/persistence/pace, decompensation, and ability to function outside the home. This discussion was replete with clear and accurate reference to the mental health records and with an emphasis on Dr. Hudson's and Dr. Kralik's exam findings. Thus this argument is without support in the record.

The ALJ's decision to afford greater weight to a more recent GAF score or to the findings of the more recent mental exam over an older mental exam is entitled to deference. *See Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995)("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'").

Because the prior two arguments are not supported, Plaintiff's argument that the ALJ should have reached different results concerning the Paragraph B and C findings and should have submitted those different results to the to the VE in hypothetical is without merit.

8

AO72A
(Rev. 8/82)

C. **Assessment of Overall RFC**

Plaintiff argues that the ALJ did not properly assess her overall RFC for two reasons: 1) he did not evaluate the combination of her impairments in determining her overall RFC. (Pl.'s Br. 11-13.); and 2.) that the ALJ improperly discredited the Plaintiff's subjective complaints of pain.

**1. Combined Impairments**

Social Security regulations provide that the Commissioner is to consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of such sufficient severity to be the basis of disability under the law. 20 C.F.R.. §§ 404.1523, 416.923 (WL current through Nov. 14, 12013); 42 U.S.C. § 423(d)(2)(B) (WL current though Nov. 13, 2013.) When an ALJ lists all of claimant's impairments and expressly states that these impairments were considered "individually and in combination," the ALJ has properly considered the combination of the impairments. *Raney v. Barnhart*, 396 F.3d 1007, (8th Cir. 2005); *see also Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (claimant's conclusory statement that ALJ failed to consider combined effects of impairments was unfounded where ALJ noted each impairment and concluded that impairments alone or in combination were not of listing level).

As discussed above, the ALJ thoroughly discussed the Plaintiff's mental and physical impairments, with clear and accurate references to the medical record throughout the decision. Heading three of the ALJ Findings of Fact states in bold typeface: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr. 81.) In discrediting some of the Plaintiff's allegations of physical pain, the ALJ expressly discussed "the combined effect of all the claimant's physical impairments." (Tr. 18-19). Discussing the Plaintiff's mental impairments, the ALJ found "[t]he claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.08." (Tr. 81)

**2. Plaintiff's Subjective Complaints of Chronic Pain**

9

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. *Id.* (citing *Polaski*, 739 F.2d at 1322). Inconsistency may be found in assessing the Plaintiff's own testimony as well as in a lack of objective findings "despite repeated consultative and claimant-initiated examinations." *Baldwin v. Barnhart*, 349 F. 3d 549, 558 (8th Cir. 2003). Nor is the ALJ required to discuss each Polaski factor "as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004). The ALJ need only acknowledge and consider those factors before discounting a clamant's subjective complaints. *Strongson v. Barnhart*, 361 F.3d 731, 738 (8th Cir. 2004).

In this case, the ALJ properly noted the lack of objective evidence to support Plaintiff's allegations of severe chronic pain. He noted repeated consultative and claimant-initiated exams which, with one exception after lifting heavy boxes, found that she had only mild lumbar bulging and normal range of motion. (Tr. 15-19.) He noted that, despite reporting her pain level as a 9 on a scale of 1-10, she has never been referred by her primary care physicians for additional testing, orthopedic evaluation, or psychiatric treatment. (Tr. 18.) He noted the conservative treatment of her alleged pain several times. (Tr. 16, 17, 18) He noted that she reported testing positive for Hepatitis C but never sought treatment. (Tr. 16.) He also noted that she has been encouraged to stop smoking, which she has not done. (Tr. 17.) He noted Dr. Kralik's repeated comments that the Plaintiff could function adequately "if she thought it was necessary" and that she would "rely on others to provide for her as long as they were willing to do

10

so." (Tr. 18.) He included consideration of her prior work record, including her current part-time work, and testimony from her mother. (Tr. 15, 19.)

When asked about medication side effects, the Plaintiff reported that her anti-depressant made her feel like "her mind was not there," and that her sleeping pill "made her eat in her sleep." (Tr. 49.) While the ALJ did not expressly discuss this, the objective medical record does not support Plaintiff's testimony. During her exam with Dr. Kralik, she admitted to eating at night when not taking the sleeping pill, and that she only took that particular pill for 2.5 weeks when she restarted an old prescription. (Tr. 377.) According to her June 22, 2011 medical records, she was not taking an anti-depressant at the time of the hearing. (Tr. 453.) Prior to the hearing, Plaintiff had not complained of any side effects from drugs except Zoloft, despite several queries. (Tr. 241, 266, 280.) She did, however, report allergies to most over-the-counter non-narcotic pain medications. (Tr. 445, 448, 452.)

Finally, the ALJ gave the Plaintiff considerable benefit of the doubt on two points in his RFC. First, he specifically did not include Plaintiff's "long history of drug and alcohol abuse" as a factor in his RFC decision, (Tr. 19.), despite Dr. Kralik's diagnosis of polysubstance abuse and findings of drug-seeking behavior. (Tr. 378.) Second, he assigned the Plaintiff a physical RFC of light work with postural limitations. (Tr. 14.) The Physical RFC assigned to the Plaintiff by the examiner in March 2010 was medium work with a six hours sit/stand limitation. ( Tr. 370.)

The ALJ properly considered the *Polaski* factors, and expressly noted many inconsistencies between Plaintiff's subjective allegations of pain and the record as a whole. Despite this, he assigned the Plaintiff an RFC of light work with postural limitations rather than the medium work level suggested by her RFC examiner. Thus, the ALJ's decision to discount at least some portion of Plaintiff's subjective allegation of chronic of pain is supported by substantial evidence.

**V.     Conclusion:**

11

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decisions, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 22nd day of November, 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)